UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| STEVEN R. RUNYAN, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 1:21-cv-01245 |
| CENLAR FEDERAL SAVINGS BANK, EQUIFAX INFORMATION SERVICES, LLC, and EXPERIAN INFORMATION SOLUTIONS INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES** Steven R. Runyan ("Plaintiff"), by and through his undersigned attorney, complaining as to the conduct of Cenlar Federal Savings Bank, ("Cenlar"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc., ("Experian") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq*.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in the Central District of Illinois, Defendants conduct business in the Central District of Illinois and all of the events or omissions giving rise to the claims occurred within the Central District of Illinois.

**PARTIES**

4. Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, resided in the Central District of Illinois.

5. Defendant Cenlar's principal place of business is located at 425 Phillips Blvd Ewing, New Jersey 08618. Cenlar is a mortgage subservicing company that provides residential mortgage loan services, as well as central loan administration and reporting solutions. Cenlar serves customers in all around the United State including in the state of Illinois. Cenlar the is a furnisher of information to the major credit reporting agencies, including Equifax and Experian.

6. Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois. Equifax's registered agent is located at 1550 Peachtree Street NW, Atlanta, Georgia.

7. Experian is a consumer reporting agency that maintains credit information on approximately 220+ million U.S. consumers and 40 million active U.S. businesses.[1] Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the state of Illinois.

---

[1] https://www.experian.com/corporate/experian-corporate-factsheet.html.  (Last visited: 5/17/2021).

**BANKRUPTCY CASE**

8. In August of 2003, Plaintiff purchased his primary residence at 7125 Washington Avenue, Saint Louis, Missouri 63130 ("subject property").

9. In 2007, Plaintiff refinanced the subject property with Ally Financial, Inc., and serviced by Cenlar.

10. In 2018, Plaintiff could not continue to afford his mortgage payment on the subject property, causing Plaintiff to fall into default status.

11. Prior to filing bankruptcy, Plaintiff was 120 days past due on his mortgage to Cenlar.

12. On July 26, 2019, Plaintiff filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court, Eastern District of Virginia, Case number 19-12460 ("bankruptcy").

13. Schedule D of the bankruptcy petition listed a secured pre-petition debt to Cenlar, secured by the subject property.

14. Because Plaintiff listed Cenlar as creditor, the Bankruptcy Noticing Center ("BNC") served each with a notice of Plaintiff's bankruptcy filing and Plaintiff's Chapter 13 Plan.

15. "Debtor is surrendering the real property located at 7125 Washington Avenue, Saint Louis Missouri 63130 ("subject property") to Cenlar Mortgage, in full satisfaction of their secured claims ("subject loan").

16. Plaintiff's Chapter 13 plan was confirmed by the Eastern District of Virginia.

17. Plaintiff fully performed his duties and made all payments as was required under the terms of his confirmed Chapter 13 Plan.

18. On April 28, 2021, the Bankruptcy Court entered a Discharge Order in Plaintiff's bankruptcy case discharging all dischargeable debts, including the loans related to the subject property.

19. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Cenlar, or any other party.

20. Plaintiff's personal liability on the subject loans was extinguished via his bankruptcy discharge, thus terminating the business relationship with Cenlar, and any of their successors and assigns.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EQUIFAX & EXPERIAN

21. In May 2021, after Plaintiff received his discharge, Plaintiff accessed his credit reports to determine whether his creditors were reporting accurate and complete information in his credit files. Plaintiff discovered Defendants were reporting multiple inaccurate and incomplete information. Plaintiff sent dispute letter to try and resolve these credit reporting errors.

22. Specifically, Equifax was reporting the subject loan with a balance of $490,167.00, a status of "closed," and no indication Plaintiff's liability was severed in his bankruptcy. Moreover, Equifax reported the subject loan with a status of "Late Over 120 Days."

23. Experian was reporting the subject loan with a balance of $490,167.00, a status of "open," and not indication Plaintiff's liability was severed in his bankruptcy. Moreover, Experian reported the subject loan with a status of "Late Over 120 Days."

24. The reporting of the subject loan was inaccurate, incomplete, and materially misleading because the subject loan was discharged in Plaintiff's bankruptcy on April 28, 2021

   a. **Plaintiff's Dispute Letters to Equifax and Experian**

25. On June 15, 2021, Plaintiff sent a written credit dispute letter to Equifax and Experian, requesting them to report the subject loan for the St. Louis property with accurate and complete information. Plaintiff attached his bankruptcy discharge order and his Chapter 13 Modified Plan to his dispute letter.

26. Among other things, Plaintiff's first dispute letter stated the following:

> "CENLAR FEDERAL SAVINGS d/b/a CENTRAL LOAN ADMIN, acct # xxxxxx8682 – The account status, balance, payment history, amount past due, and comments are all wrong and need to be corrected as I am not liable for this account."

27. Upon information and belief, Cenlar received notice of Plaintiff's dispute letter and all relevant bankruptcy information from Equifax and Experian within five days of Equifax and Experian receiving Plaintiff's dispute letters. *See* 15 U.S. Code §1681i(a)(2).

    **b. Plaintiff's Dispute Letter to Cenlar**

28. On June 25, 2021, Plaintiff sent a written dispute correspondence via email to Cenlar requesting them to report the subject loan for the St. Louis property with accurate and complete information. Plaintiff attached the demand notice, relating to the Cenlar subject loan, including Plaintiff's bankruptcy discharge notice.

29. Cenlar failed to respond to Plaintiff's requests and continues to report the subject loan on Plaintiff's consumer credit files with a balance to this date.

    **c. Experian's Failure to Correct Inaccurate Reporting**

30. On July 7, 2021, Experian responded to Plaintiff's detailed dispute letter by failing to properly investigate Plaintiff's dispute and continued to report the subject loan as "past due." Experian responded by stating that it had investigated the information and updated the Cenlar account as of July 7, 2021.

31. Despite receiving Plaintiff's dispute letter, Experian continued to report the subject loan with a balance of $490,167.00, a status of "open," and no indication Plaintiff's liability was severed through his bankruptcy discharge. Moreover, Experian reported the subject loan with a status of "Late Over 120 Days."

32. More notably, Experian failed to report the Cenlar trade line as discharged in bankruptcy and failed to report the subject loan as disputed.

33. The reporting of the Cenlar trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent, is still obligated to pay a monthly payment, a foreclosure was initiated, and the Cenlar debt was "open" after Plaintiff's discharge. Plaintiff is no longer personally liable on the subject loan by virtue of his bankruptcy discharge on April 28, 2021.

### d. Equifax's Failure to Correct Inaccurate Reporting

34. On July 15, 2021, Equifax responded to Plaintiff's detailed dispute letter by failing to properly investigate Plaintiff's dispute and continuing to report the account as "past due." Equifax responded by stating that it had investigated the information and updated the Cenlar account as of July 15, 2021.

35. Despite receiving Plaintiff's dispute letter, Equifax continued to report the subject loan with a balance of $490,167.00, a status of "closed," and not indication Plaintiff's liability was severed in his bankruptcy. Moreover, Equifax reported the subject loan with a status of "Late Over 120 Days."

36. More notably, Equifax failed to report the Cenlar trade line as discharged in bankruptcy and failed to report the subject loan as disputed.

37. The reporting of the Cenlar trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent, is still obligated to pay a monthly payment, a foreclosure was initiated, and the Cenlar debt was "open" after Plaintiff's discharge. Plaintiff is no longer personally liable on the subject loan by virtue of his bankruptcy discharge on April 28, 2021.

## IMPACT OF CONTINUING
## INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

38. As of today, Defendants' erroneous reporting continues to paint a false and damaging image of Plaintiff. Defendants have yet to update their reporting to accurately reflect the discharged status of the subject loan.

39. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, credit capacity, and his ability to move forward after his bankruptcy discharge.

40. The inaccurate and incomplete reporting of subject loans continue to have significant adverse effects on Plaintiff's credit rating and severely affects his ability to obtain financing because it creates a false impression that Plaintiff is in default on the subject loan and is still obligated to pay a scheduled monthly payment, rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

41. Specifically, on June 6, 2021, Plaintiff applied for auto financing with Capital One. Plaintiff was denied financing by Capital One because there were too many delinquent past or present mortgage credit obligations reporting on his credit.

42. The past due mortgage credit obligations Capital One was mentioning was the inaccurate reporting of the Cenlar account to Plaintiff's Experian and Equifax credit files.

43. The inaccurate reporting of the Cenlar account caused Plaintiff to be denied of financing opportunities.

44. Additionally, on August 11, 2021, in an effort to remedy the continued inaccurate and incomplete reporting of the subject loans and to validate the accuracy of Defendants' credit reporting, Plaintiff purchased a Credit Report and Score for $19.95.

45. The Credit Report Plaintiff purchased revealed that Defendants' were still inaccurately and incompletely reporting the subject loans. Moreover, Defendants' failed to report the subject loans as discharged in Plaintiff's bankruptcy.

46. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants ceased or corrected the inaccurate and incomplete reporting of the subject loans after Plaintiff's detailed disputes.

47. As a result of the conduct, actions, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit opportunity, time, and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering.

48. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting.

<u>COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>
(AGAINST CENLAR)

49. Plaintiff restates and reallages paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

51. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

52. Cenlar is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

53. At all times relevant, the above-mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

54. Cenlar violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax, Experian and Plaintiff.

55. Cenlar violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, especially Plaintiff's discharge order, provided by Equifax, Experian and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

56. Had Cenlar reviewed the information provided by Equifax, Experian and Plaintiff, it would have corrected the inaccurate designation of the subject loan, transmitting the correct information to Equifax and Experian. Instead, Cenlar wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

57. Cenlar violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with Equifax and Experian.

58. Cenlar violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax and Experian after being put on notice and discovering inaccurate, incomplete, and misleading reporting with respect to the subject loan.

59. Cenlar violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing on Plaintiff's credit files.

60. Cenlar failed to conduct a reasonable investigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax and Experian under 15 U.S.C. §1681i(a)(1).

61. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Cenlar did not correct the errors or the trade line to report accurately and completely. Instead, Cenlar wrongfully furnished and re-reported the inaccurate, incomplete and misleading information after Plaintiff's disputes to one or more third parties.

62. Moreover, Cenlar failed to report the subject loan as discharged in bankruptcy on multiple occasions.

63. A reasonable investigation by Cenlar would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's credit files.

64. Had Cenlar taken steps to investigate Plaintiff's valid disputes or Equifax and Experian's requests for investigation, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting. Plaintiff provided all relevant information to support his valid disputes in his requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

65. By deviating from the standards established by the mortgage servicing industry and the FCRA, Cenlar acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax and Experian.

**WHEREFORE,** Plaintiff STEVEN R. RUNYAN, respectfully prays this Honorable Court for the following relief:
   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
   b. An order directing that Cenlar immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;
   c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
   d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
   e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
   f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
   g. Award any other relief as this Honorable Court deems just and appropriate.

## **COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
(AGAINST EQUIFAX)

66. Plaintiff restate and realleges paragraphs 1 through 65 as though fully set forth herein.

67. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

68. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

69. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

70. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

71. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

72. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

73. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

74. Plaintiff provided Equifax with all relevant information and documentation in his request for investigation and reinvestigation to reflect his bankruptcy discharge and that he is no longer personally liable for the subject loan.

75. Equifax prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject loan in violation of 15 U.S.C. §1681c(f).

76. Moreover, Equifax failed to report the Cenlar trade line as discharged in bankruptcy.

77. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed bankruptcy and received a discharge.

78. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Equifax prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

79. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

80. Had Equifax taken any steps to investigate Plaintiff's valid disputes, it would have determined that subject loan was discharged in Plaintiff's bankruptcy on April 28, 2021.

81. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Cenlar. Upon information and belief, Equifax also failed to include all relevant information as part of the notice to Cenlar regarding Plaintiff's disputes that Equifax received from Plaintiff.

82. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject loan.

83. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

84. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Cenlar that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

85. Equifax violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan. Equifax is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

86. After Plaintiff's written detailed disputes, Equifax had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject loan.

87. Equifax knew that the inaccurate reporting of the subject loan in Plaintiff's credit files under the Cenlar trade line as delinquent, with a balance of $490,167.00, a status of "closed," and not indication Plaintiff's liability was severed in his bankruptcy. Moreover, Equifax reported the subject loan with a status of "Late Over 120 Days."

88. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

89. Despite actual knowledge that Plaintiff's credit files contained erroneous information, Equifax readily sold Plaintiff's inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

90. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

91. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

92. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting his credit information accurately and completely.

93. Equifax acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent on the subject loan after Plaintiff was discharged in bankruptcy.

94. Equifax has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

95. As stated above, Plaintiff was severely harmed by Equifax's conduct.

**WHEREFORE**, Plaintiff STEVEN R. RUNYAN, respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. An order directing that Equifax immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**COUNT III- VIOLATION OF THE FAIR CREDIT REPORTING ACT**
(AGAINST EXPERIAN)

96. Plaintiff restate and realleges paragraphs 1 through 95 as though fully set forth herein.

97. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

98. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

99. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

100. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

101. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

102. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

103. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

104. Plaintiff provided Experian with all relevant information and documentation in his request for investigation and reinvestigation to reflect his bankruptcy discharge and that he is no longer personally liable for the subject loan.

105. Experian prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject loan in violation of 15 U.S.C. §1681c(f).

106. Moreover, Experian failed to report the Cenlar trade line as discharged in bankruptcy.

107. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed bankruptcy and received a discharge.

108. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Experian prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

109. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

110. Had Experian taken any steps to investigate Plaintiff's valid disputes, it would have determined that subject loan was discharged in Plaintiff's bankruptcy on April 28, 2021.

111. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Cenlar. Upon information and belief, Experian also failed to include all relevant information as part of the notice to Cenlar regarding Plaintiff's disputes that Experian received from Plaintiff.

112. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject loan.

113.    Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

114.    Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Cenlar that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

115.    Experian violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan. Experian is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

116.    After Plaintiff's written detailed disputes, Experian had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject loan.

117.    Experian knew that the inaccurate reporting of the subject loan in Plaintiff's credit files under the Cenlar trade line as delinquent, with a balance of $490,167.00, a status of "open," and not indication Plaintiff's liability was severed in his bankruptcy. Moreover, Experian reported the subject loan with a status of "Late Over 120 Days."

118.    The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

119.    Despite actual knowledge that Plaintiff's credit files contained erroneous information, Experian readily sold Plaintiff's inaccurate, incomplete, and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

120.    By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

121.    It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

122.    Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting his credit information accurately and completely.

123.    Experian acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent on the subject loan after Plaintiff was discharged in bankruptcy.

124.    Experian has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

125.    As stated above, Plaintiff was severely harmed by Experian's conduct.

**WHEREFORE**, Plaintiff STEVEN R. RUNYAN, respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. An order directing that Experian immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: August 30, 2021                                    Respectfully Submitted,

/s/ *Victor T. Metroff*
Victor T. Metroff, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave.,
Lombard, IL 60148
Phone: (630) 537-1770
Fax: (630) 575-8188
vmetroff@sulaimanlaw.com